**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| Starbucks Corporation, a Washington corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>South Dakota Network LLC, a South Dakota limited-liability company, d/b/a SDN Communications,<br><br>                    Defendants. | Case No. 8:11-cv-237<br><br><br>**STARBUCKS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS FOR LACK OF JURISDICTION AND VENUE OR TO TRANSFER VENUE** |

COMES NOW Plaintiff Starbucks Corporation ("Starbucks") and, for its Response Brief in Opposition to Plaintiff's Motion to Dismiss for Lack of Jurisdiction and Venue or to Transfer Venue, respectfully states the following:

**INTRODUCTION**

Following rounds of correspondence in which Defendant, South Dakota Network LLC, d/b/a SDN Communications ("SDNC") threatened litigation over Starbucks' occasional use of a three-letter acronym for its Starbucks Digital Network in-store internet-content site, Starbucks was left with no meaningful option but to file this declaratory judgment action. (Doc. 1)  SDNC now seeks dismissal of the lawsuit, on the alleged grounds that this Court does not have personal jurisdiction over it and that this Court is an improper venue for this lawsuit.  Alternatively, SDNC asks this Court to transfer this matter to the District Court for the District of South

Dakota, arguing that the inconvenience of litigating in Nebraska outweighs the presumption afforded to Starbucks' choice of forum.

SDNC's arguments are without merit, and the facts on which those arguments are based are, at best, incomplete. Jurisdiction and venue are proper in this Court, and SDNC's motion should be dismissed.

## RELEVANT FACTUAL BACKGROUND

Starbucks is an international coffee and coffeehouse chain which is incorporated and has its principal place of business in the state of Washington. Starbucks has 17 company-owned stores in the state of Nebraska, 11 of which are located in the Omaha area and all of which provide free AT&T wifi internet service to customers. (Declaration of Melinda Goodleaf at ¶ 7) By comparison, Starbucks has only seven company-owned stores in the entire state of South Dakota, all of which provide free AT&T wifi internet service. (Id. at ¶ 6)

South Dakota Network LLC is a South Dakota limited-liability company that does business as SDN Communications. (Doc. 1) On or about June 22, 2006, SDNC registered with the Nebraska Secretary of State to do business in Nebraska as a foreign limited liability company. (Declaration of Douglas W. Peters, Ex. A) SDNC's registration to do business in Nebraska is active, having been renewed most recently on February 20, 2011. (Peters Decl. Ex. B) SDNC has a registered agent for service of process in the state of Nebraska. (Id.) Service of the summons and complaint in this matter was accomplished by delivering the same to the agent designated by SDNC to accept service in the state of Nebraska. (Doc. 10) SDNC, in its motion, does not allege that such service was improper or ineffective. (Doc. 11)

In late 2008, SDNC opened an office at 10110 Nicholas Street, Suite 201, in Omaha, Nebraska. (Peters Decl., Ex. C) At its inception, SDNC's Omaha office housed both service and

sales/consulting employees. (Id.) As recently as May 19, 2011, SDNC's website, www.sdncommunications.com, listed the Omaha office as one of the company's three business offices under its "contact us" tab. (Peters Decl., Ex. D) Since then, SDNC has changed its webpage to remove the reference to the Omaha office on the "contact us" tab. (Peters Decl., Ex. E) Nevertheless, current references to an Omaha presence continue to appear in other locations on the SDNC website. (Peters Decl. Ex. F) SDNC's website also includes a map of its network that includes service areas stretching across the state of Nebraska. (Peters Decl. Ex. G) SDNC's website also includes an entire section devoted to this litigation, including a video and "FAQ" section purporting to address frequently-asked questions about the lawsuit. (Peters Decl. Ex. H)

By its own admission, SDNC continues to conduct business in the state of Nebraska and derives revenue from such business operations. (Declaration of Mark Shlanta at ¶ 10 (Doc. 12-1)) The Qwest dex telephone directory for Omaha and surrounding communities issued for use through July 2011 shows several yellow-pages listings for SDN Communications, one of which lists the 10110 Nicholas Street office address and also lists SDNC's web address and a toll-free phone number. (Peters Decl. Ex. I) The current telephone directory, issued in June 2011, includes similar yellow-pages listings for SDN Communications. (Peters Decl. Ex. J)

## ARGUMENT

### I.   DEFENDANT HAS PUT FORTH NO COMPETENT EVIDENCE ON THE ISSUES OF PERSONAL JURISDICTION, VENUE, THE CONVENIENCE OF PARTIES, OR THE INTERESTS OF JUSTICE

The lion's share of SDNC's arguments depend on the purported declaration of SDNC CEO Mark Shlanta. (Doc. 12-1) Shlanta's declaration is flawed in several respects and is an improper basis for SDNC's arguments in favor of dismissal and/or transfer. Because of these flaws, Shlanta's declaration should be afforded no weight.

While a motion to dismiss under Fed. R. Civ. P. 12(b)(2) or 12(b)(3) may be supported by evidence outside the pleadings without being converted to a summary judgment motion, Fed. R. Civ. P. 56 remains relevant in that the rule, and the body of caselaw interpreting it, "offer guidelines in considering evidence outside the pleadings." *See Kamen v. Am. Telephone & Telegraph, Co.*, 791 F.2d 1006, 1010-11 (2d Cir. 1986). Rule 56 provides, in pertinent part, that "an affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(d). This Court's local rules impose similar requirements on evidentiary materials provided in support of *any* motion. NECivR 7.0.1(a)(2)(C) (Providing that evidence outside the pleadings must be supported by an affidavit made on personal knowledge, must set forth facts that would be admissible in evidence, and must show that the affiant is competent to testify to the matters stated.).

When reviewing evidence offered outside the pleadings, "a court considers 'only admissible evidence and disregards portions of various affidavits and depositions that were made without personal knowledge, consist of hearsay, or purport to state legal conclusions of fact." *Onyiah v. St. Cloud State Univ.*, Civil File No. 08-4948 (MJD/LIB), 2011 WL 1868794, at *8 (D. Minn., May 16, 2011)(quoting *Howard v. Columbia Pub. Sch. Dist*., 363 F.3d 797, 801 (8th Cir. 2004)).

Providing an unsworn declaration instead of a sworn, notarized affidavit, as SDNC attempted to do, is acceptable, but only if such declaration expressly states that the declaration is made under penalty of perjury. 28 U.S.C. § 1746.

The Shlanta declaration is not offered on personal knowledge, contains multiple instances of conjecture, speculation, and improper legal conclusions rather than factual assertions, and is

neither a sworn affidavit nor a properly executed unsworn declaration under federal law.  *See generally* Shlanta Decl. (Doc. 12-1).

    **A.**    **The Shlanta Declaration is not offered on personal knowledge**

At no point in his declaration did Shlanta declare that his statements were made on personal knowledge.  Quite the contrary, the declaration contains assertions based "on information and belief," as well as an assertion that begins:  "It appears to me upon reviewing the Complaint . . ."  (Shlanta Decl. ¶¶ 12, 13, 22).  Such assertions are not statements of fact based on personal knowledge and cannot be relied upon to support SDNC's motion.  *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d at 801; *see Brooks v. Tri-Systems, Inc.*, 425 F.3d 1109, 1111-12 (8th Cir. 2005).

    **B.**    **The Shlanta Declaration contains speculation and conclusory statements that would not be admissible in evidence**

Even assuming that Shlanta's Declaration had been made on personal knowledge, rather than on information or belief, or on appearances, key assertions in the declaration are little more than self-serving conclusions, unsupported by fact or evidence.  For example, Shlanta declares that "[t]he issue of likelihood of confusion and trademark infringement between Starbucks' alleged 'SDN' 'acronym' and the 'SDN' trademark of Defendant . . . can only be properly measured and determined in the State of South Dakota where the SDN mark is regularly used, rather than the State of Nebraska where its use is comparatively minimal."  (Shlanta Dec. ¶ 20, Doc. 12-1).  Putting aside the holes in its logic, the statement is not a fact to which Shlanta is competent to testify.  Indeed, it is not a fact at all.  Similarly, the final paragraph of the Shlanta Declaration states simply that "[t]he State of Nebraska is an improper venue and an inconvenient forum with respect to Plaintiff's action against SDN."  (Shlanta Decl. ¶ 23, Doc. 12-1).  Such self-serving and conclusory statements do not meet the test laid out by the Federal Rules or this

Court's local rules.  They are not fact, they would not be admissible in evidence, and they are not competent testimony of the declarant.

> ### C.    The Shlanta Declaration does not comply with federal law

The federal statute governing the use of unsworn declarations in lieu of affidavits states that, wherever a law of the United States or any rule or requirement made pursuant to law requires or permits the use of sworn declarations or affidavits, a declarant may, with the same effect, offer an unsworn declaration "which is subscribed by him, as true under penalty of perjury[.]"  28 U.S.C. § 1746.  Where the declaration is executed within the United States, it must contain a statement substantially similar to the following:  "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.  Executed on (date)."  28 U.S.C. § 1746(2).

In his declaration, Shlanta states only: "I declare the above statements to be true and accurate to the best of my knowledge."  (Shlanta Decl. at p. 2, Doc. 12-1).

For all of the above reasons, the Declaration of Mark Shlanta, which is the sole evidence put forth by SDNC in support of its motions, should be excluded from the Court's consideration of the merits of Defendant's motions.

## II.    THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT

SDNC is subject to personal jurisdiction on two separate and independent bases: first, it has voluntarily consented to jurisdiction by appointing a registered agent for service of process in this state; second, it has, since at least late 2008, enjoyed continuous and systematic business contacts in Nebraska, which satisfy both the "minimum contacts" required by due process, and, by extension, Nebraska's long-arm statute.

A.     **Legal Standard**

The burden of proof on the issue of personal jurisdiction lies with the plaintiff, but such burden need not be met by a preponderance of evidence until trial or until the court holds an evidentiary hearing on the issue.  *Dakota Indus. Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991).  To defeat a motion to dismiss for lack of personal jurisdiction, "the nonmoving party need only make a prima facie showing of jurisdiction."  *Id.*  If the district court relies on pleadings and affidavits to decide the motion, the court must look at the facts in the light most favorable to the nonmoving party."  *Id.*

B.     **Defendant has consented to the jurisdiction of this Court**

Although the question of personal jurisdiction normally requires an analysis of the forum state's long-arm statute and a multifactorial test to determine the nature of the defendant's contacts with the forum state, such analysis is not the only mechanism by which jurisdiction can be found.

A defendant's consent to jurisdiction is another "traditional basis of jurisdiction, existing independently of long-arm statutes."  *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1199 (8th Cir. 1990).  "One of the most solidly established ways of giving such consent is to designate an agent for service of process within the State."  *Knowlton*, 900 F.2d at 1199, accord, *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1396 (8th Cir. 1993) (analyzing consent by designation of registered agent under South Dakota's foreign-corporations act), *Foster v. Air Wisconsin Airlines Corp.*, No. Civ.05-1391(PAM/JSM), 2005 WL 2977814, at *1 (D. Minn. Nov. 7, 2005)); *Cf. Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 170-71 (1939).  Consent to jurisdiction applies to "any cause of action, whether or not arising out of activities within the state."  *Knowlton*, 900 F.2d at 1200.  When jurisdiction is based on consent, a court need not engage in a factual analysis of minimum contacts or due process.  *Id.*

In *Knowlton*, the United States District Court for the District of Minnesota had held that a foreign corporation's designation of a registered agent for service of process under the state's foreign-corporations act was not sufficient to create personal jurisdiction. *Id.* at 1198. The Eighth Circuit disagreed, stating that "[t]he whole purpose of requiring designation of an agent for service is to make a nonresident suable in the local courts." *Id.* at 1199. Although the court of appeals noted that a state could expressly limit the effect of the registered agent requirement to claims arising out of in-state activities, it found that Minnesota's foreign-corporation statute contained no such limitation. *Id.* at 1199.

Like Minnesota's foreign-corporation act, Nebraska's counterpart includes no language limiting the scope of matters for which the registered agent must accept service. The statute reads, in pertinent part, "[t]he registered agent of a foreign corporation authorized to transact business in this state shall be the corporation's agent for service of process, notice, or demand required or permitted by law to be served on the foreign corporation." Neb. Rev. Stat. § 21-20,177.

SNDC is registered to conduct business in the state of Nebraska in accordance with Nebraska law. (Peters Decl. Ex. A) As required by the act, it has appointed a registered agent, Dennis Fogland, for service of process in Nebraska. (Peters Decl. Ex. A, B) Mr. Fogland accepted service of the summons and complaint in this lawsuit on behalf of SDNC. (Doc. 10) Under the well-established jurisprudence of the Eighth Circuit, these facts alone are sufficient to confer on this Court general personal jurisdiction over SDNC. Therefore, SDNC's Motion to Dismiss for Lack of Personal Jurisdiction should be denied.

**C.    Even assuming that SDNC's designation of a registered agent for service of process did not create personal jurisdiction, SDNC's continuous and systematic business activities in the District of Nebraska have created personal jurisdiction**

Courts in the Eighth Circuit analyze personal jurisdiction on two levels:  first, they will examine the propriety of jurisdiction under the forum state's long-arm statute; second, if jurisdiction would be proper under the long-arm statute, they will determine whether the exercise of personal jurisdiction comports with due process.  *E.g. Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008).  In the present case, the distinction is irrelevant, because Nebraska's long-arm statute expressly extends jurisdiction to the fullest constitutional extent.  Neb. Rev. Stat. § 25-536.  Therefore, the sole consideration here is whether the exercise of personal jurisdiction over SDNC comports with due process.  *Steinbuch*, 518 F.3d at 585.

Due process requires minimum contacts between a nonresident defendant and the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."  *Steinbuch*, 518 F.3d at 585-86 (quoting *World-Wide Volkswagen v. Woodson*,  444 U.S. 286, 291-92 (1980)).  "The minimum contact inquiry focuses on whether the defendant purposely availed itself of the privileges of conducting activities within the forum state and thereby invoked the benefits and protections of its laws."  *Steinbuch*, 518 F.3d at 586 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  "A state may exercise general jurisdiction if a defendant has carried on in the forum state a continuous and systematic, even if limited, part of its general business; in such circumstances the alleged injury need not have any connection with the forum state."  *Id.* (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779 (1984)).  Minimum contacts must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time prior to the filing of the lawsuit.  *Pecoraro v. Sky Ranch for Boys, Inc*., 340 F.3d 558, 562 (8th Cir. 2003).

SDNC argues that its business in Nebraska is limited; it does not, however, demonstrate that it has not purposely availed itself of the privileges of conducting business in Nebraska or that its business contacts with Nebraska have not been continuous and systematic.  *See* SDNC Br. at p. 6 (Doc. 13.)[1]  Defendant also bases its contentions on facts declared nearly two months after the filing of the lawsuit, rather than at the time the cause of action arose, the time the lawsuit was filed, or a reasonable time period before the filing.  *See Pecoraro*, 340 F.3d at 562.

Courts in the Eighth Circuit consider five factors when analyzing the sufficiency of a defendant's contacts with the forum state.  These are: 1) the nature and quality of the defendant's contacts with the forum state; 2) the quantity of such contacts; 3) the relation of the cause of action to the contacts; 4) the interests of the forum state in providing a forum for its residents; and 5) the convenience of the parties.  *Steinbuch*, 518 F.3d at 586 (citing *Burlington Indus. Inc. v. Maple Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996)).  The first two factors predominate.  *Steinbuch*, 518 F.3d at 586, 588.  The third is relevant only in situations involving claims of specific personal jurisdiction, and the final two factors take on only secondary importance.  *Id*.

### 1.    *Nature, quality, and quantity of SDNC's contacts with Nebraska*

The nature, quality, and quantity of SDNC's contacts with Nebraska provide strong support for this Court's exercise of personal jurisdiction over the Defendant.

While there is no clear yardstick for measuring the sufficiency of a Defendant's contacts with the forum state there can be little legitimate dispute that SDNC's contacts with Nebraska satisfy the test.

---

[1] To the extent that SDNC's arguments on jurisdiction, venue, or transfer rely on assertions made in the Shlanta Declaration, they should be rejected.  See Section I, *infra*.  Nevertheless, for purposes of argument only, Starbucks will address SDNC's arguments as though they have been properly presented.

Even under the cases offered up by Defendant, such a conclusion is inescapable. Defendant relies on *Jarvis & Sons v. Freeport Ship Building*, 966 F.2d 1247, 1250 (8th Cir. 1992) and *Gould v. P.T. Krakatau Steel*, 957 F.2d 573, 575-56 (8th Cir. 1992) for its argument that SDNC's contacts with Nebraska are too attenuated to meet the minimum-contacts test. (Doc. 13 at 7)  But such reliance is misplaced.  According to Defendant, *Jarvis* stands for the proposition that, in the Eighth Circuit, "a defendant has insufficient contact with the forum state where the defendant has no office or employees in the forum state; has no bank accounts or property in the forum state; does not have sales representatives, advertise or solicit in the forum state; and does not design products specifically for use in the forum state."  SDNC Br. at 7(Doc. 13), citing *Jarvis*, 966 F.2d at 1250.  Defendant's lengthy listing of the factors considered by the Eighth Circuit in *Jarvis*, is, however, conveniently incomplete.  The actual quote from which Defendant's citation was derived includes the following:

> [D]efendant has no office *or agent or representative* or employees in [the forum state]; none of defendant's employees *has ever visited* [the forum state] . . . Defendant does not do business [in the forum state] and maintains no office or agent or employees in [the forum state].

*Jarvis*, 966 F.2d at 1250 (emphasis added).  Here, the facts demonstrate that Defendant: 1.) does have an agent or representative in Nebraska; 2.) does have, or until recently did have employees in Nebraska; 3.) does conduct business in Nebraska; 4.) does, or until recently did, maintain an office in Nebraska.  In addition, SDNC actively seeks customers in Nebraska through its purchase of yellow-pages listings in the Omaha area.  (Peters Decl. Exs. I, J)

Moreover, even if all of the factors noted in *Jarvis* were absent, which they are not, that fact alone would not be determinative.  *See Vandelune v. 4B Elevator Components Unltd.*, 148 F.3d 943, 948 (8th Cir. 1998).

SDNC further argues that, because only a small percentage of its revenues come from Nebraska, sufficient minimum contacts do not exist to give rise to personal jurisdiction. This argument also must fail. "The percentage of a company's sales in a given state is generally not relevant to the general jurisdiction analysis as the focus lies on whether the contacts are continuous and systematic." *Steinbuch*, 518 F.3d at 587, (citing *Lakin v. Prudential Securities, Inc.*, 348 F.3d 704, 709 (8th Cir. 2003)); *see also Keeton*, 465 U.S. at 779-81 (Holding that general jurisdiction existed where magazine publisher carried out part of its general business in the forum state and benefitted from sales there.)

The sum of all of SDNC's protestations is, essentially, that it has not "purposefully availed itself of the privilege of conducting activities in" Nebraska in a "continuous and systematic, even if limited" way. *See Steinbuch*, 518 F.3d at 586. This argument flies in the face of the clear facts of SDNC's contacts with and activities in Nebraska and should be rejected.

### 2.    *The interest of Nebraska in providing a forum*

As noted above, the fourth and fifth factors in the Eighth Circuit's minimum-contacts analysis, the forum states interest in providing a forum, and the convenience of the parties, are of secondary importance. Nevertheless, Nebraska has an interest in regulating the activities of companies registered to conduct business here, and also in providing companies doing business here, such as Starbucks, a forum to seek redress in business disputes.

### 3.    *The convenience of the parties*

The convenience of the forum state to the parties is the final factor to be considered in determining whether personal jurisdiction is proper. It is a secondary factor that is accorded little weight, and with good reason. SDNC mentions, but does not discuss this factor in its motion or brief. Given the close proximity of Sioux Falls, South Dakota, to Omaha, Nebraska, any supposed inconvenience to SDNC arising from the otherwise proper exercise of personal

jurisdiction by this Court is so slight as to be irrelevant. A defendant who purposefully avails itself of the privilege of doing business in the forum state should not be free to avoid the jurisdiction of courts in that state merely because it is not headquartered there. *Cf. Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) ("[T]he Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed."). Further, the Supreme Court in *Burger King* noted that advances in transportation and communications have decreased the burden and inconvenience to a non-resident defendant of litigating in a state where it engages in economic activity. *Id.* The continuing rapid technological advances of the 26 years since *Burger King* have only further reduced that burden.

SDNC's consent to jurisdiction in Nebraska, its continuous and systematic conduct of business in Nebraska since 2006, and even the declaration of SDNC's CEO that SDNC conducts business in Nebraska, has an employee in Nebraska, and derives revenues from its activities in Nebraska, all compel the conclusion that this Court's exercise of personal jurisdiction over SDNC in this matter is consistent with due process.

## III.    VENUE IS PROPER IN THIS COURT BECAUSE PERSONAL JURISDICTION EXISTS

Venue is appropriate in the District of Nebraska because SDNC resides in the District. See 28 U.S.C. § 1391(b). Under the venue statute, corporations are deemed to reside in any district in which they are subject to personal jurisdiction. 28 U.S.C. § 1391(c). Therefore, as noted by Defendant, "venue and personal jurisdiction are virtually coextensive." (SDNC Br. at p. 4 (Doc. 13) citing *Hoover Group Inc. v Custom Metalcraft, Inc.*, 84 F.3d 1408, 1410 (Fed. Cir. 1996)).

Because this Court has personal jurisdiction over SDNC both by consent and by minimum-contacts analysis, *see* Section II, *infra*, venue in this Court is proper and Defendant's Motion to Dismiss under Fed. R. Civ. P. 12(b)(3) must be denied.

## IV.   TRANSFER OF VENUE SHOULD BE DENIED BECAUSE DEFENDANT CAN NOT MAKE A STRONG SHOWING THAT THE INCONVENIENCE TO PARTIES AND WITNESSES OUTWEIGHS STARBUCKS' INTEREST IN LITIGATING IN THE FORUM OF ITS CHOICE

SDNC argues that, if the Court finds personal jurisdiction and venue are proper in the District of Nebraska, it should nonetheless disregard Plaintiff's choice of forum and transfer this case to the District of South Dakota under 28 U.S.C. § 1404(a).  This Court should reject that argument due to the nature of this case, the proximity of the potential forums, and the deference traditionally given to a Plaintiff's choice of forum.

The applicable portion of the change of venue statute, 28 U.S.C. § 1404(a), states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The grant or denial of motion to transfer venue is left to the broad discretion of the trial court, and the trial court's decision will not be disturbed absent a showing of abuse of discretion.  *Hubbard v. White*, 755 F.2d 692, 694-95 (8th Cir. 1985).

When considering a motion to transfer venue under Section 1404(a), courts in the Eighth Circuit consider the following factors:

1.)     the convenience of the parties;

2.)     the convenience of the witnesses; and

3.)     the interests of justice.

*Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997).

The party seeking the transfer of a matter under Section 1404(a) bears the burden of proving that transfer is warranted, and in light of the deference given to a plaintiff's choice of forum, there is a strong presumption in favor of the nonmoving party. *See Beckley v. Auto Profit Masters, L.L.C.*, 266 F. Supp. 2d 1001, 1006 (S.D. Iowa 2003) (citing *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997), *Radisson Hotels, Int'l v. Westin Hotel Co.*, 931 F.Supp. 638, 641 (D. Minn. 1996)). In other words, in order to justify a transfer under Section 1404(a), the moving party must clearly demonstrate that factors favoring transfer strongly outweigh the non-moving party's choice of forum. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). The strong presumption in favor of the plaintiff's choice of forum loses some force where the Plaintiff "hails from a foreign nation," where no relevant connection exists between the parties and the forum state, or where the plaintiff's choice of forum was motivated by a desire to harass the defendant. *See, e.g. In re Apple, Inc*., 602 F.3d 909, 913 (8th Cir. 2010). None of those factors apply here. Starbucks' choice of forum is entitled to deference.

On the other side of the scale, SDNC makes no credible showing that the inconvenience to it or to witnesses requires transfer to South Dakota. Rather, it supplies a few items of conjecture, unsupported by facts.

### A.   The convenience prongs of the 1404(a) test do not strongly favor transfer

Factors normally considered by courts under the so-called "convenience prongs" of Section 1404(a) include, "(1) the convenience of the parties, (2) the convenience of the witnesses-including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) accessibility of records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each state's forum law." *Biometics, LLC v. New Womyn, Inc.*, 112 F. Supp. 2d 869, 875 n.4 (E.D. Mo. 2000). This list is

not exhaustive, however, as the Eighth Circuit has recognized that determinations on transfer motions "require a case by case evaluation of the particular circumstances at hand and a consideration of all relevant factors."   *Prism Techs., LLC v. Verisign, Inc.*, Nos. 8:08CV195, 8:08CV196, 2008 WL 5111044, at *4 (D. Neb., Dec. 2, 2008).

In *Prism*, the Court considered a variety of factors, including a "center of gravity" analysis under which "the preferred forum is that which is the center of gravity of the accused activity."   *Prism Techs.*, 2008 WL 511044, at *5 (internal quotations omitted).   Although *Prism*, and the center-of-gravity analysis discussed there, dealt with patent-infringement claims, the logic of such a test is instructive here, where the claims center around Starbucks' use of an acronym that is alleged to infringe on SDNC's trademarks.   As between the two forums in which the matter "might have been brought," South Dakota and Nebraska, the clear center of the allegedly infringing activity is Nebraska, which has nearly two and a half times as many Starbucks stores offering wifi service than does South Dakota.   (Goodleaf Decl. at ¶¶ 6, 7) Indeed, Starbucks has more company-owned stores offering free AT&T wifi in Omaha alone than in the entire state of South Dakota.   (Id.)

Even without a center-of-gravity analysis, SDNC has not put forth facts sufficient to make the required showing that the convenience of the parties and the interests of justice tilt strongly toward transfer.

### 1.      *Convenience to the parties*

SDNC bases its argument largely on the premise that "South Dakota is certainly a more convenient venue for the defendant" and that "South Dakota is no more inconvenient for Starbucks than is Nebraska."   (SDNC Br. at p. 10 (Doc. 13)).   As support for these propositions SDNC points to the "location of documents and tangible items in South Dakota" and the

"location where the correspondence and written communication from [Defendant] to Starbucks . . . originated." (Id.) Neither of these facts provides the necessary force to overcome the presumption in favor of Plaintiff's choice of forum.

First, the pertinent documents are almost certainly maintained in electronic format and can be transported easily and without great cost. *See Prism Techs.,* 2008 WL 5111044, at *6 (citing *Biometics, LLC v. New Womyn, Inc.*, 112 F.Supp.2d 869, 876 (E.D. Mo. 2000)). SDNC also makes no allegation that originals of paper documents maintained in South Dakota will be required for use as evidence, making the location of those originals that much less meaningful to the transfer analysis. *See Wurth Elec. Midcom, Inc. v. Digital Light, LLC*, No. CIV. 10-1002, 2010 WL 2925381, at *5 (D.S.D., July 19, 2010).

Second, given the nature of this declaratory-judgment action premised on allegations of trademark infringement, the universe of documents relevant to the issues in this case is likely to be comparatively small. This is because the issues at the center of this case are not the development and registration of SDNC's trademarks, but rather whether Starbucks' occasional second-reference use of the acronym "SDN" to denote its Starbucks Digital Network rises to the level of trademark use at all, and, if so, whether such use is likely to cause confusion with SDNC's registered marks. This question likely will be addressed primarily through expert testimony and consumer surveys. To the extent that documents will be required from SDNC, many, if not most, will be documents available electronically and/or in the public domain.

Third, the argument that a forum is more convenient simply because certain letters were sent from there makes little sense and should not be deemed sufficient to tip the scales in favor of transfer. SDNC's threatening letters merely provided the trigger for Starbucks' declaratory

judgment action.  As noted above, the events at the center of this controversy are Starbucks' use

of the SDN acronym, which did not arise in South Dakota.

### 2.      *Convenience to witnesses*

To meet its burden regarding the convenience of witnesses prong of the transfer analysis,

"the party seeking transfer must clearly specify the key witnesses to be called and must make a

general statement of what their testimony will cover."  *Wurth*, 2010 WL 2925381, at *5 (citing

A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure: Jurisdiction*

§ 3851 at 264 (1976)).  Defendant did name a number of witnesses, all of whom, apparently, live

in South Dakota.  Shlanta Decl. ¶ 21 (Doc. 12-1)  SDNC did not, however, provide a general

statement of what those individuals' testimony would cover, did not demonstrate that the

testimony of these individuals would not be duplicative, made no showing that these individuals

would not willingly testify in Nebraska, and made no showing that deposition testimony would

be insufficient for the testimony of any of these individuals.  SDNC has the burden of making

these showings, and it simply has not done so.

In addition, it is likely that the key witnesses for both parties will be experts called to

opine on the likelihood of consumer confusion, or lack thereof, created by Starbucks' occasional

use of the SDN acronym to refer to its in-store internet content site.  Not only are the locations of

those future experts unknown, they would be entitled to little weight in a transfer analysis.  *See,*

*e.g. Promuto v. Waste Mgmt, Inc.*, 44 F. Supp. 2d 628, 639-40 (S.D.N.Y. 1999).

Even assuming that some of SDNC's claimed "primary witnesses" ultimately would have

to attend a trial in Omaha in this matter, there is little showing of significant inconvenience.

Unlike patent cases or some complex commercial disputes, any trial in this matter would be

measured in days, not weeks, and no single witness would be required to attend all or even most

of the proceeding.  Moreover, the distance from Sioux Falls to Omaha is less than the distance between Sioux Falls and many other locations within the District of South Dakota; likewise, it is less than the distance between Omaha and many other locations within the District of Nebraska.

This case is different from other recent cases in which courts in the Eighth Circuit addressed the relative inconvenience of witnesses in the context of a motion to transfer venue. For example, in *Prism*, 2008 WL 5111044, at *6, this Court weighed the inconvenience to parties and witnesses of traveling from Northern California to Omaha for what likely would have been a protracted trial.  In *Apple*, 602 F.3d at 913-14, the Eighth Circuit weighed the inconvenience of parties and witnesses traveling from Northern California to Fort Smith, Arkansas.  Here, the inconvenience, if any, to be measured is the inconvenience of traveling from Sioux Falls to Omaha, a distance of less than 200 miles—about the same as the distance from Omaha to Kearney.

This case also can be distinguished from a recent matter in which this Court transferred from North Platte, Nebraska, to Denver, Colorado, reasoning, in part, that "plaintiffs' representatives travel to Colorado on a regular basis to conduct business with Tri-State" and that "lead counsel for all parties are from Denver, Colorado."  *Chimney Rock Pub. Power Dist. v. Tri-State Generation and Transmission Assoc., Inc.*, No. 7:09-CV-5008-LES-FG3, 2010 WL 3328262, at *5 (D. Neb., July 13, 2010).  Here, Defendant has not shown—and could not show—that similar circumstances exist.

### B.      The interests of justice prong does not favor transfer

When considering the interests of justice prong of the transfer analysis, courts typically consider issues such as judicial economy, the plaintiff's choice of forum, the comparative costs to the parties of litigating in each forum, each party's ability to enforce a judgment, obstacles to a fair trial, conflict of law issues, and the advantages of having a local court determine questions of

local law.  *Prism Techs.*, 2008 WL 5111044, at *4 (citing *Biometics*, 112 F. Supp. 2d at 875 n. 4).

Of these issues, only one, the plaintiff's choice of forum, tips decidedly in either direction.[2] [3]  SDNC argues that Starbucks' choice of forum should be given no deference, but makes no factual showing that trenches on any of the remaining issues to be considered under this prong.  It argues that the District of South Dakota is better able to apply South Dakota law in SDNC's promised, but as-yet non-existent counterclaims under South Dakota law.  See SDNC Br. at p. 12-13 (Doc. 13).  There are no questions of South Dakota law raised in Starbucks' Complaint, however.  On the contrary, Starbucks' claims arise primarily under federal trademark and declaratory judgment laws.  (Doc. 1 at ¶¶ 28-29)  Starbucks seeks a declaration related to state–law claims under Nebraska's trademark laws.  (Doc. 1 at ¶¶ 30-31)  Under SDNC's own logic, this fact weighs against transfer.  Moreover, this Court has recognized that, in trademark cases under the Lanham Act with pendent trademark and unfair competition claims brought under state law, the state law claims will be resolved by decision on the federal claims. *ConAgra, Inc. v. George A. Hormel & Co.*, 784 F.Supp. 700, 702 n.2, 3 (D. Neb. 1992). Therefore, the contingent future raising by SDNC of claims under South Dakota trademark law

---

[2]  It also should be noted that SDNC's establishment of a section on its website devoted to this litigation, complete with a video of Vernon Brown discussing the litigation and a listing of "frequently asked questions" and answers, could be construed as an effort by SDNC to create an obstacle to Starbucks' getting a fair trial in South Dakota (Peters Decl., Ex. H), Starbucks does not have sufficient information at this time to gauge the scope of SDNC's public-relations campaign regarding this litigation.

[3]  Although not expressly argued in its brief, SDNC, through the Declaration of Mark Shlanta, argues that the likelihood of confusion "can only be properly measured and determined in the State of South Dakota  where the SDN mark is regularly used, rather than the State of Nebraska where its use is comparatively minimal."  (Shlanta Decl. at ¶ 20)  At the same time, however, SDNC claims national rights over the SDN mark, and has demanded that Starbucks cease using the SDN acronym nationwide, even though the vast majority of its use of the acronym occurs outside of South Dakota and, indeed, in areas where Defendant has no presence whatsoever.

should not be given significant weight.  In light of these facts, SDNC cannot meet its burden of showing that the facts of the case "strongly" favor transfer.

**CONCLUSION**

In light of all the foregoing, Plaintiff Starbucks Corporation respectfully requests that this Court deny Defendant's Motion to Dismiss for Lack of Jurisdiction and Venue or to Transfer Venue.

Dated this 15th day of September, 2011.

STARBUCKS CORPORATION, INC., Plaintiff

By  s/ Patrick C. Stephenson
John P. Passarelli #16018
Patrick C. Stephenson #19138
Douglas W. Peters #23782
KUTAK ROCK LLP
1650 Farnam Street
Omaha, NE  68102-2186
Telephone  (402) 346-6000
Facsimile  (402) 346-1148
john.passarelli@kutakrock.com
patrick.stephenson@kutakrock.com
douglas.peters@kutakrock.com

**CERTIFICATE OF SERVICE**

I hereby certify that on September 15, 2011, I electronically transmitted the foregoing to the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Bruce D. Vosburg
Gerald L. Friedrichsen
FITZGERALD, SCHORR, BARMETTLER &
BRENNAN, P.C., L.L.O.
10050 Regency Circle, Suite 200
Omaha, NE  68114
Telephone: (402) 342-1000
Facsimile: (402) 342-1025
bvosburg@fitzlaw.com
gfriedrichsen@fitzlaw.com

William P. Heaston
South Dakota Network, LLC
2900 West 10th Street
Sioux Falls, SD  57104
Telephone: (605) 978-3596
bill.heaston@sdncommunications.com


By:     s/Douglas W. Peters
        Douglas W. Peters