IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| STARBUCKS CORPORATION, a Washington corporation, ) ) ) | |
| Plaintiff, ) ) | 8:11CV237 |
| v. ) ) | |
| SOUTH DAKOTA NETWORK LLC, a South Dakota limited-liability company, ) ) ) | MEMORANDUM AND ORDER |
| Defendant. ) ) | |

This matter is before the court on the defendant's motion to dismiss for lack of jurisdiction or improper venue or, alternatively, to transfer venue, Filing No. 11. This is an action for declaratory relief involving a trademark. Starbucks Corporation seeks a declaration that its use of the acronym "SDN" for "Starbucks Digital Network" does not infringe or violate a trademark registered by defendant South Dakota Network, LLC ("South Dakota Network"), and does not constitute a false or misleading designation of origin under the Lanham Act, 15 U.S.C. § 1051 *et seq*., or other state and federal statutes.

Starbucks is a Washington corporation with its headquarters and principal place of business in Seattle, Washington. Filing No. 1, Complaint at 1. It owns a chain of coffeehouses throughout the United States that sell coffee, food items, and related merchandise. *Id.* Starbucks also provides Internet-based wireless access to Internet communication services to customers in its stores. *Id.* South Dakota Network, LLC, is a South Dakota limited liability company with its headquarters and principal place of business in Sioux Falls, South Dakota. *Id.* It provides telecommunication and Internet services primarily in South Dakota and neighboring states. "SDN" is the trademark of South Dakota

Network.  *Id.*  It is registered with the United States Trademark Office for use in connection with goods and services that include "wireless broadband communication services; providing high speed access to area networks" and "dedicated access to the internet."  *Id.*

In its complaint, Starbucks relates and alleges that it has implemented a wireless platform and Web site known as Starbucks Digital Network.  South Dakota Network has written to Starbucks, asserting willful infringement of its mark and asking Starbucks to cease and desist using the registered mark "SDN" in reference to the Starbucks Digital Network.  Starbucks alleges that the correspondence places Starbucks in reasonable apprehension of a lawsuit claiming infringement of the South Dakota Network's marks.

South Dakota Network moves to dismiss for lack of personal jurisdiction and improper venue.  Alternatively, it moves to transfer venue to South Dakota.  It asserts that it does not have sufficient minimum contacts with the state of Nebraska to confer jurisdiction on this court.  In opposition to the motion, Starbucks argues that South Dakota Network has voluntarily consented to jurisdiction by appointing a registered agent for service of process in this state, and that South Dakota Network has had continuous and systematic business contacts in Nebraska that satisfy the minimum contacts requirement.

I. FACTS

Both parties have submitted affidavits in support of their positions.  *See* Filing Nos. 12, 17, and 20.  The defendant has shown by affidavit that it has no offices in the State of Nebraska, although it concedes that it has one employee who resides in Nebraska and who does repair and maintenance on customer equipment in Nebraska.  Further, it has shown that it does not own or have any ownership interest in any real estate in Nebraska, nor any bank accounts or officers, managers/directors, or sales agents or representatives

in Nebraska. South Dakota Network has also shown that its revenues from Nebraska customers over the past three years have been less than 1% of its total revenues. It has also submitted evidence indicating that the primary potential witnesses in the action reside in South Dakota, that the events giving rise to Starbucks' claim, including the creation, development and marketing of its trademark, as well as correspondence and written communications, occurred in South Dakota.

In opposition to the motion, Starbucks submits evidence that South Dakota Network is registered to conduct business in the state of Nebraska in accordance with Nebraska law, and has appointed a registered agent, Dennis Fogland, for service of process in Nebraska. Filing No. 17, Index of Evid., Attachment 2, Declaration of Peters, Ex. A, Initial registration to do business in Nebraska; Ex. B, 2011 annual renewal of its registration to do business in Nebraska. Starbucks served a copy of the summons and complaint in this lawsuit on Dennis Fogland on July 1, 2011. See Filing No. 10, Return of Service. Starbucks has also submitted copies of news releases with respect to South Dakota Network opening an establishment of a business office in Omaha in 2009 and computer screen prints showing that South Dakota Network has contacts listed in Nebraska on its Web site, as well as a business listing in the Yellow Pages. *See id.*, Exs. C through G.

    II.  LAW

        A.  Personal Jurisdiction

The plaintiff bears the burden to establish the court's in personam jurisdiction. *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 646-47 (8th Cir. 2003). However, "'[t]o defeat a motion to dismiss for lack of personal jurisdiction, the [plaintiff] need only make a prima facie showing of jurisdiction'" and may do so by affidavits, exhibits, or other evidence.

*Romak USA, Inc. v. Rich*, 384 F.3d 979, 983 (8th Cir. 2004) (quoting E*pps*, 327 F.3d at 646-47 (8th Cir. 2003)).  The court views the evidence in the light most favorable to the plaintiff, as the nonmoving party, and resolves factual conflicts in its favor.  *Epps*, 327 F.3d at 647.

Jurisdiction over a nonresident defendant must satisfy the requirements of the forum state's long-arm statute and of due process.  *Oriental Trading Co. v. Firetti,* 236 F.3d 938, 943 (8th Cir. 2001).  Nebraska's long-arm statute allows a court to exercise jurisdiction over a person transacting any business in the state, contracting to supply services or things in the state, or causing tortious injury by an act or omission in the state.  *See* Neb. Rev. Stat. § 25-536(a)-(c).  Because Nebraska's long-arm statute has been construed to permit jurisdiction to the extent of constitutional limits, the key question is whether the exercise of personal jurisdiction comports with due process.  *Oriental Trading,* 236 F.3d  at 943; *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003).

Due process protects the defendant's right not to be coerced except by lawful judicial power.  *J. McIntyre Mach., Ltd. v. Nicastro,* — U.S. —, — 131 S. Ct. 2780, 2786-87 (2011) (plurality opinion).  A court may subject a defendant to judgment only when the defendant has sufficient contacts with the sovereign "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Id.* (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  "As a general rule, the sovereign's exercise of power requires some act by which the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  *J. McIntyre Mach.,* 131 S. Ct. at 2787 (quoting *Hanson v. Denkla,* 357 U.S. 235, 253 (1958).

4

A person may submit to a state's authority in a number of ways, including explicit consent, as well as "'[p]resence within a State at the time suit commences through service of process,'" for example, or "[c]itizenship or domicile—or, by analogy, incorporation or principal place of business for corporations," which also indicates general submission to a state's powers. *J. McIntyre Mach. Co.*, 131 S. Ct. at 2787; *Goodyear Dunlop Tires Operations, S.A. v. Brown,* — U.S. —, —, 131 S. Ct. 2846, 2854 (2011). These examples show "circumstances, or a course of conduct, from which it is proper to infer an intention to benefit from and thus an intention to submit to the laws of the forum State." *J. McIntyre Mach. Co.,* 131 S. Ct. at 2787 (noting that these examples support exercise of the general jurisdiction of a state's courts and allow the state to resolve both matters that originate within the state and those based on activities and events elsewhere). For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home. *Goodyear,* 131 S. Ct. at 2853-54 (identifying domicile, place of incorporation, and principal place of business as paradigm bases for the exercise of general jurisdiction); 2851 (noting that a court may assert general jurisdiction over sister-state corporations to hear any and all claims against them when the corporation's "continuous and systematic" affiliations with the state render them essentially at home in the forum state).

Specific jurisdiction, on the other hand, depends on an affiliation between the forum and the underlying controversy. *Id.* at 2851. Specific jurisdiction can be shown by proving that the defendants availed themselves of the privileges of conducting business in the state. *See J. McIntyre Mach.*, 131 S. Ct. at 2789 (explaining that purposeful availment hinges on "whether a defendant has followed a course of conduct directed at the society

5

or economy existing within the jurisdiction of a given sovereign"); *Goodyear*, 131 S. Ct. at 2855 (explaining distinction between general, all-purpose jurisdiction and case-specific jurisdiction and noting that placing a product in the stream of commerce, without more, is far short of the "continuous and systematic general business contacts" necessary to confer general jurisdiction, that is, jurisdiction over claims that are unrelated to anything that connects the defendant to the state).

In Nebraska, a foreign corporation that wishes to transact business in the state must acquire a certificate of authority from the Secretary of State and must "continuously maintain in this state" a registered office and a registered agent. Neb. Rev. Stat. §§ 21-20,168; 21-20,174. Nebraska law states that "a registered agent of a foreign corporation authorized to transact business in this state is the corporation's agent for service of process, notice, or demand required or permitted by law to be served on a foreign corporation." Neb. Rev. Stat. § 21-20,177. Under Nebraska law, "[b]y designating an agent upon whom process may be served within this state, a defendant has consented to the jurisdiction in personam by the proper court." *Mittelstadt v. Rouzer*, 213 Neb. 178, 328 N.W.2d 467, 181 (Neb. 1982); *see also Ytuarte v. Gruner & Jahr Printing & Pub. Co.*, 935 F.2d 971, 973 (1991) (stating that the appointment of an agent for service of process gives consent to the jurisdiction of a state's courts for any cause of action, whether or not arising out of activities within the state). Such consent is a valid basis of personal jurisdiction. *Ytuarte*, 935 F.2d at 973; *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1394–95 (8th Cir.1993) (recognizing consent as another means to acquire personal jurisdiction over a nonresident defendant); *Knowlton v. Allied Van Lines*, 900 F.2d. 1196, 1199 (8th Cir. 1990) (recognizing consent as the other traditional basis of jurisdiction, existing

independently of long-arm statutes). A defendant may voluntarily consent or submit to the jurisdiction of a court which otherwise would not have jurisdiction over it. *Id.* (noting that "one of the most solidly established ways of giving such consent is to designate an agent for service of process within the State").

### B. Improper Venue

The Lanham Act has no special venue provision and thus the general venue statute is applicable. *Woodke v. Dahm,* 70 F.3d 983, 985 (8th Cir. 1995). That statute provides that a federal-question case may be filed in a judicial district where any defendant resides or in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(1) and (2). For purposes of venue, "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). The court's resolution of the personal jurisdiction issue is dispositive of the improper venue issue. Accordingly, the court finds venue is proper in this district.

### C. Motion to Transfer Venue

Even if venue is proper, a district court may nevertheless transfer any civil action—for the convenience of the parties and witnesses or in the interest of justice—to any other district in which it could have been brought. 28 U.S.C. § 1404(a). The venue provision was drafted in accordance with the doctrine of *forum non conveniens*, which permits transfer to a more convenient forum. *Wisland v. Admiral Beverage Corp.,* 119 F.3d 733, 736 n.2 (8th Cir. 1997).

In general, the party seeking transfer bears the burden of establishing that the transfer should be granted. *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 695

(8th Cir. 1997). The movant must make a clear showing that the balance of interest weighs in favor of the movant. *BASF Corp. v. Symington,* 50 F.3d 555, 557 (8th Cir. 1995).

"'[I]n general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted.'" *In re Apple, Inc.,* 602 F.3d 909, 913 (8th Cir. 2010) (quoting *Terra Int'l, Inc. v. Miss. Chem. Corp.,* 119 F.3d 688, 695 (8th Cir. 1997)). "This 'general' practice of according deference, however, is based on an assumption that the plaintiff's choice will be a convenient one. *In re Apple,* 602 F.3d at 913 (noting that the Eighth Circuit has "never said that 'a choice of forum supported only by the fact that it was chosen,' in and of itself, does anything more than shift the burden of proof to a movant seeking transfer under § 1404(a)") (citation omitted). When no relevant connection exists between parties, potential witnesses, or the dispute and a state, a plaintiff's choice of forum is entitled to minimal weight in the § 1404(a) determination. *Id.*

The Eighth Circuit has "declined to offer an 'exhaustive list of specific factors to consider' in making the transfer decision." *Id.* at 912 (quoting *Terra Int'l,* 119 F.3d at 691). The district court should, however, "weigh any 'case-specific factors' relevant to convenience and fairness to determine whether transfer is warranted." *Id.* When deciding a motion to transfer venue under the doctrine of *forum non conveniens*, courts must consider: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. *Id.* A district court is directed to take account of factors other than those that bear solely on the parties' private ordering of their affairs; it must also "weigh in the balance the convenience of the witnesses and those public-interest factors of systemic

integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.'" *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 30 (1988).

### III.  DISCUSSION

The court finds that the defendant's motion to dismiss for lack of personal jurisdiction should be denied.  The evidence establishes that the defendant has consented to suit in this jurisdiction by obtaining a certificate to transact business in this state and designating a registered agent for service of process.  Because the defendant maintains a registered agent for service of process in Nebraska, it has consented to jurisdiction in this state.  The court need not address the "minimum contacts" issue, but notes that the defendant's activities in this state are not the sort of random or attenuated conduct that has been held insufficient to confer jurisdiction on the court.  The evidence shows that South Dakota Network has an agent or representative in Nebraska, has at least one employee in Nebraska, and conducts at least a small amount of business in Nebraska.  Further, the evidence shows that South Dakota Network seeks customers in Nebraska through Yellow Pages listings and its presence on the Web.

In considering the defendant's motion to transfer venue, the court finds the motion should be granted.  The events at the center of the controversy are Starbucks' use of the acronym "SDN," which would presumably occur at all of its locations throughout the country.  Conduct connected to the implementation and enforcement of the trademark occurred in South Dakota, although the cease-and-desist letters were received in Nebraska.  The defendant has shown that most witnesses are located in South Dakota.  The defendant has demonstrated that it would be inconvenienced in  litigating this matter in the District of Nebraska; whereas the plaintiff has not shown much of a relevant

connection to Nebraska, nor that a transfer to South Dakota would impose any significant hardship on it. Nebraska may have more Starbucks outlets than South Dakota, but that fact is inconsequential. The effects of any allegedly infringing conduct will be felt in South Dakota, where the likelihood of confusion would arguably be the greatest. Deference to Starbucks' choice of forum is outweighed in this instance by the inconvenience to the defendant in litigating in Nebraska.

IT IS ORDERED:

1. The defendant's motion to dismiss or transfer (Filing No. 11) is granted in part and denied in part.

2. The motion to dismiss for lack of personal jurisdiction is denied.

3. The motion to transfer venue is granted.

4. The Clerk of court is directed to transfer this action the United States District Court for the District of South Dakota.

DATED this 20th day of December, 2011.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.